# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RWB Services, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07 C 1073 |
| v. | ) |
| | ) Judge Ruben Castillo |
| Rally Capital Services, LLC; James J. Sec, as | ) |
| Assignee for the Assignment of Benefit of | ) |
| Creditors; Howard Samuels, as Assignee for | ) |
| the Assignment of Benefit of Creditors; | ) |
| Hartford Computer Group, Inc.; Anthony | ) |
| Graffia, Sr.; Anthony Graffia, Jr.; and Impero | ) |
| Electronics, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff RWB Services, LLC, ("RWB") filed a ten-count suit in state court against Hartford Computer Group, Inc. ("Hartford"), Impero Electronics, LLC, ("Impero"), Anthony Graffia, Sr. ("Graffia, Sr."), and Anthony Graffia, Jr. ("Graffia, Jr.") (collectively "Defendants"). Defendants removed the case to federal court on February 23, 2007, based on federal question jurisdiction because Count X of the complaint alleged that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (R. 1, Notice Of Removal.) RWB filed an amended federal complaint ("Complaint") adding Defendants Rally Capital Services, LLC ("Rally") and the Assignees/Trustees for the Assignment of Benefit of Creditors of Rally Capital, James Zec ("Zec") and Howard Samuels ("Samuels"). (R. 7, Compl.) Defendants now move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 18, Mot. to Dismiss.)

## BACKGROUND[1]

In April 2003, RWB entered into an agreement to loan $951,000 to WIP Marketing, Inc. ("WIP"), the assignee of purchase orders for cameras distributed by Argus Industries, Inc. ("Argus"). (R. 7, Compl. ¶¶ 11-12.) The agreement provided that RWB would wire the loan proceeds to WIP's supplier, who would then ship the cameras to Argus's end customers—in this case, Wal-Mart. (*Id.* ¶¶ 13-17.) WIP was then supposed to direct Wal-Mart to pay RWB (through WIP's bank account). (*Id.*) RWB claims that it maintained a security interest in the cameras purchased with its loan money and their sale proceeds. (*Id.* ¶¶ 17-19.)

After loaning $585,000 to WIP, RWB discovered that Argus was directing Wal-Mart to pay an Argus Bank One account rather than the WIP account. (*Id.* ¶ 17.) Nevertheless, RWB was paid in full for this first round of funding. (*Id.* ¶ 211.) On June 3, 2003, RWB loaned WIP the remaining $366,000 to purchase model 1510 cameras, which Argus sold and shipped to Wal-Mart on or about June 10, 2003. (*Id.* ¶¶ 20, 205.) RWB also entered into an agreement with Argus, WIP, and Bank One whereby the parties agreed that proceeds of WIP inventory financed by RWB that were received into the Argus Bank One account would be applied to first pay down the loans made by RWB to WIP. (*Id.* ¶¶ 18, 21.)

On June 17, 2003, Argus assigned all its assets to Rally Capital and ceased operations. (*Id.* ¶ 21.) Despite an auction scheduled for July 11, 2003, to sell Argus assets, on June 27, 2003, Rally entered into a purchase agreement to sell substantially all of Argus's assets to Hartford, which was allegedly operated or managed by Graffia, Sr. and Graffia, Jr. (*Id.* ¶¶ 26, 204, 207.)

---

[1] These facts are derived from RWB's Complaint, because on a motion to dismiss, we accept as true the well-pleaded factual allegations in the complaint. *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1994 (U.S. 2006).

Rally and Hartford also allegedly entered into an agreement whereby Hartford would receive a 30% fee to collect Argus's existing receivables, excluding cameras or receivables financed by RWB. (*Id.* ¶¶ 26-30, 207.)

RWB alleges that on July 11, 2003, Hartford moved Argus's inventory, including thousands of model 1510 cameras, from Argus's warehouse to Hartford's warehouse and sold the cameras to Wal-Mart companies. (*Id.* ¶¶ 39, 208.) Hartford allegedly instructed Wal-Mart to pay Hartford directly for the cameras (with checks payable to Argus), and to send back any returned cameras to Hartford. (*Id.* ¶¶ 212, 223-224.) In addition, RWB claims that on July 24, 2003, when Hartford began receiving returned cameras from Wal-Mart, Hartford repackaged the cameras and sold them as new. (*Id.* ¶¶ 39-40, 208-214, 226.) RWB calculates that it is entitled to more than $500,000 of the money Hartford received from the sale of the cameras. (*Id.* ¶¶ 218-221, 225.)

RWB alleges that this scheme continued until 2005, when Hartford transferred the Argus assets to Impero. (*Id.* ¶¶ 59, 204.) RWB claims that both Hartford and Impero were operated or managed by the Graffias. (*Id.* ¶¶ 40, 59, 204.) Since Impero obtained the Argus assets, Impero allegedly has continued to repackage returned cameras from Wal-Mart and sell them as new. (*Id.* ¶¶ 61, 231.) RWB claims it was entitled to be reimbursed for its loan and thus was entitled to the price of the cameras or the returned RWB cameras themselves. (*Id.* ¶¶ 212-25.)

RWB filed a ten-count Complaint stemming from these facts: nine state law claims and only one federal claim—Count X, the RICO claim—upon which Defendants removed this action. Defendants move to dismiss Count X with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and then to dismiss the entire case for lack of subject matter

jurisdiction. Defendants argue that this Count should be dismissed because: (1) RWB lacks standing because it has not suffered any injury from the purported fraudulent scheme; (2) RWB has not suffered any damages proximately caused by the purported fraudulent scheme; (3) the purported "fraudulent scheme" in this case does not constitute the "pattern of racketeering activity" required for a valid RICO claim.

## LEGAL STANDARD

Defendants move to dismiss the RICO claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), because RWB lacks standing to bring the claim. "In ruling on a motion under Rule 12(b)(1), [a] district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The issue of standing is determinative in this case, and thus the Court need not address Defendants' Rule 12(b)(6) arguments.

## ANALYSIS

In Count X of the Complaint, RWB claims that the Graffias violated RICO, 18 U.S.C. §§ 1962(c) and 1962(d). (*Id.* ¶¶ 254-259.) To prove a violation of Section 1962(c), a plaintiff must establish that there has been: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 670 (7th Cir. 2005). RWB also alleges that the Graffias violated Section 1962(d) of RICO for conspiring to violate Section 1962(c). "A conspiracy to violate RICO may be shown by proof that the defendant, by his words or actions, objectively manifested an agreement to participate,

4

directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes." *Id.* at 674.

Section 1964(c) sets out the standing requirements under RICO: "[a]ny person injured in his business or property by reason of a violation of section 1962" may bring a civil action under RICO. 18 U.S.C. § 1964(c). Injury in fact and causation are jurisdictional requirements that must be satisfied in order to sustain a RICO claim. *Evans v. City of Chi.*, 434 F.3d 916, 924 (7th Cir. 2006). RWB was injured in its business or property. RWB loaned $366,000 to WIP/Argus to purchase cameras, but RWB was never repaid. RWB claims a security interest in the cameras purchased with the $366,000—the so-called "RWB cameras".

The parties dispute, however, whether the Graffias' alleged pattern of racketeering caused RWB's injury. The RICO violation must be both the "but for" and proximate cause of the injury to the plaintiff's business or property. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). In other words, RWB must show: (1) that but for Defendants' conduct of an enterprise through a pattern of racketeering, he would not have been injured; and (2) some direct relation between the injury asserted and the injurious conduct alleged. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004).

RWB cannot show either type of causation in this case. RWB alleges that the Graffias committed a pattern of racketeering activity by accepting returned cameras from Wal-Mart that did not belong to them (including RWB cameras), falsely re-packaging and re-selling the returned cameras as new, and receiving payment for these cameras through mail and wire transfers to their bank. (R. 7, Compl. ¶ 254.) In essence, RWB claims its injury meets the "but for" causation standard because but for Defendants' directing Wal-Mart to return RWB cameras

5

to Hartford and re-selling RWB cameras, RWB would either have been repaid its $366,000, or given $366,000 worth of cameras. This argument, however, overlooks a large gap in causation: whether Defendants would have re-paid RWB the $366,000, or returned the RWB cameras to RWB, in the absence of the alleged scheme. This result does not logically follow from RWB's allegations, which tend to show that RWB would not have been repaid regardless of the scheme to re-package and re-sell used cameras as new. As stated above, RWB alleges that even before RWB loaned the $366,000, Wal-Mart was directed to pay a Bank One account for the cameras rather than an account earmarked for RWB. When Hartford continued to sell RWB cameras to Wal-Mart, Hartford allegedly instructed Wal-Mart to pay Hartford directly for the cameras. Then, Hartford instructed Wal-Mart to send back returned cameras to Hartford, and from there, the Graffias allegedly re-packaged and re-sold those cameras as new. It is thus cannot be said that "but for" the alleged racketeering scheme RWB would not have been injured.

Neither has RWB established that its injury was proximately caused by Defendants' scheme. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1998 (U.S. 2006). In *Holmes*, the Supreme Court provided three policy rationales for the proximate cause requirement: (i) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors;" (ii) "quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries;" and (iii) "the need to grapple

with these problems is simply unjustified by the general interest in deterring injurious conduct since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes*, 503 U.S. 258 at 268. Our own Court of Appeals recently posed the following questions to determine proximate causation: "Is someone else a distinctly better enforcer? Does the presence of intermediate parties make it too hard to calculate damages—or create a risk that recovery by this plaintiff will come at the expense of someone with a better claim? If so, then suit by the remotely injured person should not be allowed." *Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 930 (7th Cir. 2007) (citing *Holmes*, 503 U.S. at 268-70).

These factors weigh against standing in this case. Wal-Mart or its related companies—who were sold re-packaged, used cameras as new—would be "distinctly better enforcers" in this case, where the scheme alleged is selling re-packaged, used cameras as new. Unlike Wal-Mart, RWB was not the direct victim of Defendants' alleged scheme. In fact, Defendants could have repaid RWB's loan with the money they received from fraudulently re-selling used cameras as new to the Wal-Mart companies. Unfortunately for RWB, it was never repaid. Nevertheless, "firms suffering derivative injury from business torts . . . must continue to rely on the common law . . . rather than resorting to RICO." *Id.* at 933 (internal citations and quotations omitted). "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Evans v. City of Chi.*, 434 F.3d 916, 925 (7th Cir. 2006).

Because RWB cannot satisfy the causation element of RICO standing, RWB's RICO claim, Count X of his Complaint, is dismissed.

## STATE LAW CLAIMS

Because the Court has dismissed RWB's RICO claim for lack of subject matter jurisdiction, allowing RWB leave to replead would not save its claim. As civil RICO was RWB's sole federal claim, we will exercise our discretion and relinquish supplemental jurisdiction over RWB's remaining state law claims. 28 U.S.C. § 1367(c)(3). Generally, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, RWB's state law claims are remanded to state court.

## CONCLUSION

Accordingly, Defendants' motion to dismiss Count X of the Complaint, the RICO count, is granted. (R. 18.) The remaining state claims are remanded to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(d).

Entered:

**Judge Ruben Castillo**
**United States District Court**

**Dated: August 22, 2007**